Lucky, J.
delivered the opinion of the court.
■The pleadings and proofs in this case, so far as it is necessary to notice them, in the opinion of the court, show the following facts. The complainant was a purchaser at the Hiwassee land sales, in the year 1820, of a tract of land, for which he obtained a certificate, and paid into the Treasury $815 04, being one-fourth of the purchase money. For this land he was sued in ejectment by John Hildebrand, who claimed as a reservee under the treaties of 1817 and 1819. During the pendency of the suit, an act of Assembly was passed, 24th of October, 1823, authorising the complainant to compromise this suit and others, and in default of his doing so he was to certify the fact to the Treasurer of East Tennessee, whose duty it was made to issue certificates to the purchasers, for as much land as they had paid money into the Treasury under the original purchase, at fifty cents per acre, and the Surveyor of the Hiwassee District was authorised to survey the same. The suits *55 were not compromised under the authority of the act, but were lost,’and the Treasurer, by virtue of the authority of the act, issued a certificate to the complainant for 1630.acres of land, dated 23d February, 1824. This land was surveyed' for McConnell on the 2d April, 1824, and included thirty acres;,, of land in the north east side of the south east quarter of section 34, township 2, range 2, east of the meridian, Monroe county. On these thirty acres is situated a portion of the town of- Madisonville, formerly Tellico. The Register of the Hiwassee District refused to issue a grant to McConnell for the thirty. acres, on the ground that he had before the presentation of the certificate of the -Surveyor and Treasurer, issued a grant to the commissioners of the town of Madisonville for the same land.
An act was passed on the 22d November, 1823, ch. 260, to establish the seat of justice for the county of Monroe. The 12th section of this act authorised the commissioners under it “to select one “ hundred and sixty acres of vacant and .unappropriated land in “ said county of Monroe, and obtain a grant from the Register of “ East Tennessee for the same, in their name as commissioners afore- “ said, for the use and benefit of said county town.” In obedience to the authority vested in the commissioners by this act, on the first Monday of February, 1S24, they selected a quarter section of land, which included the thirty acres now in dispute, and took possession of the same before the complainant had his survey made. The lots of the town were sold in the spring of 1824.
The selection was complete and consummated before the commissioners had any knowledge of the complainant’s claim. Before the opening of the Entry Taker’s office in the Hiwassee District, one of the commissioners designated in the act of Assembly gave the Entry Taker the number of the quarter section which the commissioners had selected, the name of the town was written across the quarter section in the map of the district, and notice of this selection, both written and oral, was publicly given. The lots were sold in May, 1824, and a grant issued to the commissioners 19th June; -1826.
The purchasers of lots from the commissioners rely upon all the grounds of defence applicable to the commissioners; and, also, that they are purchasers for a valuable consideration without notice of complainant’s claim, and entitled’to the protection of the court.
At the time of the passage of the act of 1823, appointing com *56 missioners for the seat of justice for the county of Monroe, the Entry Taker’s office for the Hiwassee district was not open for the purpose of receiving entries. By an act of the same session of the Legislature, chapter 26, that office was established and directed to be opened on the first Monday of February, 1824.
The prayer of the complainant’s bill in this case is, that the title of the commissioners of the town of Madisonville and the purchasers from them for the thirty acres in controversy may be divested out of them and Vested in the complainant. This is resisted on several grounds, all of which it is not deemed necessary, in the opinion of the court, to consider.
Atthe timeof the passage of the. act of 1823, appointing commissioners for establishing the seat of justice for the county of Monroe, the fee simple to the territory of country called the Hi-wassee District, or at least a greater portion of it, was still in the State of Tennessee, not having been subjected to general appropriation or entry. As to that portion of the territory which was vacant and unappropriated there can be no question but that the legislature had a right to dispose of it in any manner which it thought proper. In pursuance of this purpose, the 12th section of the act appointing the commissioners of the town of Madisonville, formerly Tellico, was adopted. The selection of a suitable location for the seat of justice for the county of Monroe, was deemed an object of public utility; and as the State owned large quantities of vacant unappropriated land, the bestowment of a portion of it for public purposes, for a less consideration than it was disposed of to citizens generally and prior in point of time, was deemed not inconsistent with the duty of the legislature to the community at large, all of whom had an interest in the proceeds of the sales of the Hiwassee lands. These lands had been surveyed, but there was no office opened for the reception of entries; and thence the legislature departed from their ordinary language, and say, “that the commissioners for the county seat of Monroe, shall be permitted to select one hundred and sixty acres of vacant and unappropriated lands” for the purpose aforesaid. The commissioners were not required to await the opening of the Entry Taker’s office on the first Monday in February, 1824, before they could make a selection, for that might have defeated the object of legislative bounty, but they were permitted to make their selection forthwith, or at least there is nothing in the act to negative this idea, and every *57 thing to lead to a contrary conclusion. The money was to be paid to the Treasurer of East Tennessee when the grant was issued, and all other enterers were to pay to the Entry Taker. The title of the commissioners was intended by the legislature to be a peculiar statutory title. The mode of selection on the part of the commissioners was designed to supersede the ordinary method of entry which was confined to the community at large. - The State had guarded the right of the occupants by requiring the commissioners to select vacant and unappropriated land.
It is objected in this case, that by the 7th section of the act áp-pointing the commissioners, they had no authority to sell the town lots until they had procured a title for the land. So far as the rights of the complainant in this case are concerned, this objection cannot be valid. It does not make void the title of the commissioners, and is merely directory in its character, and as we think could not effect the sales in the slightest degree. Any question that might arise under this section, would be between the commissioners and the purchasers at their sales. It is not improbable that this section had reference to another provision of the act, which authorised the commissioners to purchase land of individuals if necessary'.
We are, therefore, clearly of opinion that the selection of the commissioners, which was the inception of their title, having been made prior to the acquisition of any claim or right on the part of the complainant, that they have the better title both legal and equitable, and that it must prevail. The selection was made by the commissioners on the 2d of February, 1824; the certificate of the Treasurer, upon which the complainant rests his claim, did not issue until the 23d of February, 1824. In addition to this, the purchasers alledge in their answer, and there is nothing in the whole record to contradict it, that they are innocent purchasers for a valuable consideration, and so far as they are concerned, this is an insuperable barrier to the recovery of the complainant.
' In the view which we have taken of the case, we have not deemed it necessary to say any thing on the question of the statute of limitations, which is raised in the pleadings, as the other questions are decisive of the case. Let the decree of the Chancellor be affirmed witlTcosts.